STEPHEN C. STEINBERG (SBN 230656)
*ssteinberg@bartkopavia.com*
MICHAEL D. ABRAHAM (SBN 125633)
*mabraham@bartkopavia.com*
BARTKO PAVIA LLP
1100 Sansome Street
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Attorneys for Defendant Male Excel, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MALE EXCEL INC., a Florida Corporation and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 3:26-cv-06191-MMC<br><br>**DEFENDANT MALE EXCEL, INC.'S RESPONSE TO ORDER TO SHOW CAUSE RE: ARTICLE III STANDING (ECF NO. 25)**<br><br>Judge: Hon. Maxine M. Chesney<br>Crtrm.: 7 – 19th Floor |

Defendant Male Excel, Inc. ("Male Excel") respectfully responds to the Court's Order to Show Cause regarding Article III Standing (ECF No. 25).

**I. INTRODUCTION**

Male Excel properly removed this action on the basis of federal question and CAFA jurisdiction, and in light of the original Plaintiff John Doe's ("Doe 1") allegations. Plaintiff John Doe 2 ("Doe 2") then filed a First Amended Complaint ("FAC") alleging the Court has federal question jurisdiction. ECF No. 13. Male Excel maintains that the Court has Article III jurisdiction over this case. Failing to plead the more-specific and more-demanding injury required by each statute shows a failure to state a claim under Rule 12(b)(6), not a failure to establish standing. *Jones v. Ford Motor Co.*, 85 F.4th 570, 573-74 (9th Cir. 2023). The FAC alleges violations of statutory privacy rights rooted in historical, substantive privacy law, including wiretap claims the Ninth Circuit has held confer Article III standing. *Id.*; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-99 (9th Cir. 2020) ("*Facebook Internet Tracking*"). The FAC also alleges use of numerous trackers, cookies, and canvas fingerprints, tracking across websites, and concrete harm to Doe 2, which allegations set this case apart from *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), which involved only session-replay software and vague and legally insufficient allegations of harm. Male Excel disputes the FAC's allegations and seeks dismissal based on non-Article III grounds, including failure to plead the specific type or level of injury required by each statute. But those deficiencies go to statutory standing and other defects under Rules 12(b)(6) and 12(f), not to Article III standing. *Jones*, 85 F.4th at 573. Consistent with Ninth Circuit precedent, the Court should retain jurisdiction and rule on Male Excel's pending motion.

**II. PROCEDURAL HISTORY**

A. <u>The Original Complaint, Removal to Federal Court, and Dismissal by Doe 1</u>

On May 5, 2026, Doe 1 commenced this action by filing a Class Complaint (the "Complaint") in California state court. On June 22, 2026, Male Excel properly removed the case to this Court based on: (1) federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1441(a), because Doe 1 pleaded a claim under the federal Wiretap Act, Title I of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq.*; and (2) the Class Action

Fairness Act under 28 U.S.C. § 1332(d), because the proposed class exceeded 100 members, Doe 1 was a citizen of California and Male Excel was a citizen of Delaware and North Carolina, and the amount in controversy exceeded $5,000,000 based on Doe 1's allegations. ECF No. 1. Notably also for purposes of Article III standing, Doe 1 allegedly inputted medical information in a questionnaire on Male Excel's website, https://www.maleexcel.com (the "Website"), which was purportedly shared with third parties, Google and Heap, via numerous cookies, third-party trackers, device fingerprints, and session replay software. ECF No. 1-3 ¶¶ 1-3, 7-64, 104, 106, 122-31. Doe 1 did not move or otherwise seek to remand the case back to California state court.

Because Doe 1 could only have reached the questionnaire by first agreeing to Male Excel's Terms and Conditions that require individual arbitration, Male Excel planned to file a motion to compel individual arbitration. ECF No. 12 at 2:1-4. Faced with these facts, Doe 1 stipulated to dismiss his claims, his counsel stipulated to file an amended complaint with a new plaintiff, and the filed Stipulation became the Order of the Court. ECF No. 12.

B. Doe 2's First Amended Complaint

On July 21, 2026, Doe 2 filed the FAC that alleges the same causes of action as the Complaint: (1) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 (wiretap) and 638.51 (pen register/trap and trace); (2) violation of the federal Wiretap Act; (3) violation of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502; (4) invasion of privacy under Art. I, § 1 of the California Constitution; (5) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and (6) violation of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56 *et seq.* ECF No. 13 (FAC). Unlike the Complaint, the FAC alleges "[t]his Court has original subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under the Wiretap Act, 18 U.S.C. § 2510 et seq. … ." *Id.* ¶ 13.

The FAC alleges Doe 2 did not fill out the questionnaire (to avoid arbitration) or otherwise agree to arbitration. *Id.* ¶ 122. It repeats the Complaint's allegations of numerous tracking technologies besides session replay being used to share data and track activity, including across other websites (*id.* ¶¶ 41, 77, 91, 126), and the allegations of concrete harm, specifically:

> 102. As a result of the unauthorized disclosure, Plaintiff and the Classes have been injured in several ways. Plaintiff and Class members (i) now know or should know that their PII was disclosed without their authorization; (ii) face an imminent and ongoing risk of identity theft and similar cybercrimes; (iii) have expended and will continue to expend time and money to protect against cybercrimes; (iv) have lost value in their PII; and (v) did not receive the benefit of their bargain with Defendants regarding data privacy.

## III. LEGAL ANALYSIS

While the FAC fails for the reasons stated in Male Excel's Motion to Dismiss and/or Strike (*see* ECF Nos. 16, 19), the FAC contains allegations that are sufficient to meet the constitutional pleading floor required for Article III standing. In *Jones*, 85 F.4th at 573, the Ninth Circuit rejected the plaintiffs' request to remand the case to state court "based on the flawed argument that Ford 'self-rebutted the assertion of Art. III jurisdiction' when it alleged that Plaintiffs failed to plead a statutory injury … in its motion to dismiss." The Ninth Circuit explained:

> To establish the constitutional minimum for Article III jurisdiction, a plaintiff must plead an injury-in-fact; this creates a pleading floor. A particular cause of action may require more—for instance, a particular type of injury or a threshold magnitude of injury—without raising the constitutional pleading floor. A failure to plead the more-specific or more-demanding statutory injury shows a failure to state a claim, not a failure to establish standing.

*Id.* at 573-74. The court held the law is settled that "[a] statute that codifies a common law privacy right 'gives rise to a concrete injury sufficient to confer standing.'" *Id.* at 574. The Ninth Circuit found the plaintiffs "plausibly articulate[d] an Article III injury because they claim violation of a substantive privacy right," and thus, "the district court properly retained jurisdiction to hear this case." *Id.* But the Ninth Circuit also upheld the dismissal under Rule 12(b)(6) based on a failure to allege facts showing the specific type of statutory injury required under the Washington Privacy Act. *Id.* at 574-75; *see also In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 711-16 (N.D. Cal. 2011), aff'd, 572 F. App'x 494 (9th Cir. 2014) (finding plaintiffs had Article III standing under Rule 12(b)(1), but failed to state a claim under ECPA, UCL, and CDAFA under Rule 12(b)(6)).[1]

---

[1] To the degree *Popa*'s approach is deemed to conflict with *Jones's* approach for how to analyze Article III standing after *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), both were decided after *TransUnion*, and the earlier-decided *Jones* decision's approach constitutes the binding precedent. *See Hart v. Massanari,* 266 F.3d 1155, 1171 (9th Cir. 2001) ("the first panel to consider an issue sets the law" for all of the district courts in the circuit).

The distinction made in *Jones* and *Facebook Privacy Litigation* applies here in that the failure to allege the type of injury needed for statutory standing is a failure to state a claim under Rule 12(b)(6), not a question of lack of subject matter jurisdiction under Rule 12(b)(1). *Id.*; *see Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of *statutory* standing requires dismissal for failure to state a claim"; italics in original); *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009) ("lack of statutory standing is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction").[2]

Consistent therewith, Male Excel's Motion to Dismiss and/or Strike the FAC raises non-Article III grounds for dismissal, including: (1) unauthorized use of a fictitious name; (2) lack of the type of injury, loss, or damages needed for statutory standing under CIPA, CDAFA, UCL, and CMIA; (3) the class allegations should be dismissed or stricken because they propose improper fail-safe classes, individualized issues predominate, and manageability problems appear on the face of the FAC; (4) the wiretap claims fail due to no interception while in transit, no contents being intercepted, and/or on the party exception; (5) the federal wiretap claim also fails because the crime-tort exception is insufficiently pleaded; (6) the CIPA wiretap claim also fails because there is no reading or attempting to read or learn the contents of a communication while in transit; (7) the CIPA pen register/trap and trace claim fails because it only applies to telephone technology and/or because of contradictory claims the captured data is "contents";[3] (8) the CDAFA claim fails because the particular type of damage or loss covered by the statute is not pleaded; (9) the California constitutional invasion of privacy claim fails because there was no reasonable expectation nor serious invasion of privacy, and there is no private right of action for damages—only injunctive relief, which Doe 2 does not seek; (10) the UCL claim fails for lack of

---

[2] *Rodriguez v. Autotrader.com, Inc.,* 2025 WL 1085787, at *1-2 (C.D. Cal. April 4, 2025), reached the correct result in holding no statutory standing existed (as reflected by the court distinguishing the plaintiff's cited cases as involving different statutes with distinct standing requirements and therefore irrelevant to standing under CIPA), though in an earlier order that court cited to lack of subject matter jurisdiction (2025 WL 1122387, at *2-3 (C.D. Cal. March 14, 2025)), contrary to the Ninth Circuit precedent cited above.

[3] Additionally, the passage of SB 690—which is expressly retroactive—means Doe 2 will not have statutory standing to bring his CIPA pen register/trap and trace claim. *See* ECF No. 23 (Male Excel's Request for Leave to File Statement of New Authority).

factual allegations showing lost money or property; and (11) the CMIA claim fails since the alleged data is not "medical information" as defined under the statute. ECF Nos. 16, 19.

Regarding the Article III constitutional pleading floor, the FAC alleges violations of statutory privacy rights that are grounded in the substantive, historical right to privacy which allegedly resulted in a variety of concrete injuries, specifically: "Plaintiff and Class members (i) now know or should know that their PII was disclosed without their authorization; (ii) face an imminent and ongoing risk of identity theft and similar cybercrimes; (iii) have expended and will continue to expend time and money to protect against cybercrimes; (iv) have lost value in their PII; and (v) did not receive the benefit of their bargain with Defendants regarding data privacy." ECF No. 13 (FAC) ¶ 102. This is sufficient because "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" for purposes of Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Furthermore, in *Facebook Internet Tracking*, the Ninth Circuit held Article III standing existed for a federal Wiretap Act claim and CIPA wiretap claim because these claims involved a substantive, historical right to privacy. 956 F.3d at 599. "[T]he legislative history and statutory text demonstrate that Congress and the California legislature intended to protect these historical privacy rights when they passed the Wiretap Act, … and CIPA." *Id.* at 598. This holding is consistent with the U.S. Supreme Court's later decision in *TransUnion*, 594 U.S. at 430-31, as *Popa* acknowledges when it states:

> [W]e need not revisit … *In re Facebook* in reaching our decision today. … those decisions still accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries … "Plaintiffs alleged that Facebook continued to collect their data after they had logged off the social media platform, in order to receive and compile their personally identifiable browsing history … *'no matter how sensitive' or personal users' browsing histories were.*"

153 F.4th at 794 (italics in original). Here, the FAC (ECF No. 13) likewise alleges wiretap claims under the federal Wiretap Act (¶¶ 159-70) as well as CIPA (¶¶ 145-58), and alleges tracking of Doe 2 after he left Male Excel's Website and across other websites. *Id.* ¶ 126. Just as in *Facebook Internet Tracking*, these allegations are sufficient to meet the minimal pleading floor for Article III standing, but they nonetheless fail to state a claim under Rule 12(b)(6).

Each of Doe 2's other statutory claims is likewise rooted in the historical, substantive right to privacy,[4] and is alleged to have caused him concrete injury. *See* CDAFA, Cal. Penal Code § 502(a) ("The Legislature further finds and declares that protection of the integrity of … computers, computer systems, and computer data is vital to the protection of the privacy of individuals …"); ECF No. 13 (FAC) ¶¶ 204-05, 209 (UCL claim premised on alleged violations of CIPA, ECPA, and CDAFA); *Brown v. Mortensen*, 51 Cal.4th 1052, 1071 (2011) (interest protected by CMIA is privacy); ECF No. 13 (FAC) ¶ 122.

The present case is also distinguishable from the alleged facts underlying *Popa*. In that case, the plaintiff alleged only that session replay software purportedly captured her preferences and interests on a pet store website (153 F.4th at 786-87), and that this capture caused her "mental anguish and suffering" and caused her to "experience mental anguish, emotional distress, worry, fear, and other harms." Req. for Jud. Not. in Support of Resp., Ex. 1 (First Amended Complaint – Class Action filed in *Popa v. PSP Group, LLC d/b/a Pet Supplies Plus, et al.*) ¶¶ 140-41, 154-55. These allegations fail to state a claim (historical or present), including not forming a basis for recovery of emotional distress damages. In contrast, Doe 2 alleges the Website loaded numerous third-party trackers, multiple cookies and canvas fingerprints, and a session recorder, and tracked his activity across other websites. ECF No. 13 (FAC) ¶¶ 41, 77, 91, 126. And Doe 2 alleges this caused him concrete injuries, including that his data was disclosed without authorization, this created a risk of identity theft and cybercrime that he spent time and money to protect against, and he lost the value of his PII. FAC ¶ 102. Accordingly, for purposes of Article III standing, *Popa* is readily distinguishable from the FAC in the present case based on the differences in factual and harm allegations. As noted above, *Popa* also acknowledged Article III jurisdiction existed in *Facebook Internet Tracking* for federal Wiretap Act and CIPA wiretap claims based on allegations in that complaint which match similar allegations in the FAC in the present case.

While Male Excel disputes Doe 2's allegations, he has pleaded enough in the FAC to meet the constitutional pleading floor and thus has Article III standing. The FAC remains subject to

[4] Over 100 years of common law tort claims based on the right of privacy exist, including for intrusion upon seclusion. *Hill v. Nat'l Collegiate Athletic Assn.,* 7 Cal.4th 1, 23-27 (1994).

dismissal or being stricken under Rules 12(b)(6) and 12(f) for the reasons set forth in Male Excel's Motion to Dismiss and/or Strike. *See Lujan*, 504 U.S. at 561; *Jones*, 85 F.4th at 573-74.

## IV. CONCLUSION

For the foregoing reasons, Article III jurisdiction exists over each of the FAC's statutory claims and, pursuant to 28 U.S.C. § 1367, supplemental jurisdiction exists over Doe 2's California constitutional invasion of privacy claim. Male Excel respectfully requests that the Court retain jurisdiction, reschedule the hearing on Male Excel's Motion to Dismiss and/or Strike the FAC, and grant the Motion.

DATED: October 16, 2026

BARTKO PAVIA LLP

By: */s/ Stephen C. Steinberg*
Stephen C. Steinberg
Attorneys for Defendant Male Excel, Inc.